TRENTON & MERCER COUNTY TRACTION CORPORATION et al. v.
        INHABITANTS OF CITY OF TRENTON et al.

(District Court, D. New Jersey.   October 14, 1915.)

1. CARRIERS ⊚⇒12—STATE REGULATION OF RATES—POWERS OF STATE BOARD.
       Act N. J. April 21, 1911 (P. L. p. 374), creating a state board of public
    utility commissioners and defining its powers, provides by section 17 that
    the board shall have power to hear and determine whether an increase,
    change, or alteration in any existing rate charged by a public utility, in-
    cluding street railway companies, is just and reasonable, and to suspend
    such increase, change, or alteration for a period of not exceeding three
    months "pending such hearing and determination." *Held*, that the statute
    does not require a notice and hearing to authorize the board to make such
    an order of suspension, which merely preserves the status quo.
       [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 7–11, 15–20;
    Dec. Dig. ⊚⇒12;   Street Railroads, Cent. Dig. § 151.]

2. COURTS ⊚⇒508—FEDERAL COURTS—SUIT TO RESTRAIN ACTION BY STATE
    BOARD.
       Where the question whether an increase in rates by a street railroad
    company is just and reasonable is pending before a state board vested
    by the Legislature with power to determine the same, a federal court will
    not before the state board has passed upon the question, or had an op-
    portunity to do so, interfere by injunction to restrain action by such board
    because the right to so increase the rates is based on ordinances claimed
    to constitute contracts which the state cannot constitutionally impair.
       [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1423, 1425–
    1430;   Dec. Dig. ⊚⇒508;   Injunction, Cent. Dig. § 72.]

In Equity.   Suit by the Trenton & Mercer County Traction Corpora-
tion, the Mercer County Traction Company, the Trenton, Hamilton &
Ewing Traction Company, and the Trenton Street Railway Company
against the Inhabitants of the City of Trenton, Frederick W. Donnelly,
Mayor, and Ralph W. E. Donges, John J. Treacy, and John W. Slocum,
constituting the Board of Public Utility Commissioners of New Jersey.
On motion for preliminary injunction.   Denied.

On application for preliminary injunction to restrain the city of
Trenton and its mayor from proceeding under a certain ordinance of
the city, passed on October 22, 1909, and to restrain the board of public
utility commissioners of New Jersey from continuing a certain order
made by them on August 17, 1915, and from conducting a hearing, and
taking jurisdiction of the case in which the order was made.

Before WOOLLEY, Circuit Judge, and RELLSTAB and HAIGHT,
District Judges.

Frank S. Katzenbach, Jr., Edward M. Hunt, and George W. Mac-
Pherson, all of Trenton, N. J., for plaintiffs.
Charles E. Bird, of Trenton, N. J., and George L. Record, of Jersey
City, N. J., for defendant city of Trenton and its mayor.
Frank H. Sommer, of Trenton, N. J., for defendant Board of Public
Utility Commissioners.

HAIGHT, District Judge.   Three of the plaintiffs are the owners of
a street railway system in the city of Trenton, N. J., and the fourth is

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

operating the system as lessee. Many years ago one of the predecessors in title of the plaintiff, the Trenton Street Railway Company, began to sell to such persons as wished them six tickets for 25 cents, each ticket good for one fare of 5 cents. This practice was continued until September, 1909, when it was discontinued for about two weeks, but, after some conferences and negotiations with the city officials, was restored, and has since been followed by the various operating companies. On October 22, 1909, the city passed an ordinance which required the sale of six of such tickets for 25 cents on all cars operated by the Trenton Street Railway Company in the city. On August 13, 1915, the lessee company notified the city and the board of public utility commissioners of New Jersey of its intention to discontinue the sale of such tickets. In this notice it claimed that the ordinance of October, 1909, was invalid, and asserted its right to charge a fare of five cents for each passenger over five years of age, within the limits of Trenton, by virtue of certain alleged contracts between the city and the companies of which it is lessee. Thereupon, on motion of the city, the board on August 17, 1915, made an order suspending the proposed change until November 16, 1915, and fixing a date for hearing on the merits. The plaintiffs were not represented before the board when the order was made. They claim that it was made without notice to them and without affording them an opportunity to be heard. The bill also alleges that the mayor of the city has threatened, pursuant to the power vested in him by the ordinance before mentioned, to revoke the licenses of the cars operated by the lessee company, in case the latter refuses to continue to sell six tickets for 25 cents.

After the order was made by the board the plaintiffs filed a bill in this court, wherein they pray that the board may be enjoined from continuing the order of August 17th, from conducting a hearing, and from taking jurisdiction of the matter at all, and also an injunction against the city and its mayor from enforcing the penalty prescribed in the ordinance. Upon the filing of the bill an application was made to the writer of this opinion for a preliminary injunction. An order to show cause why the injunction prayed for should not be allowed, was granted, but without an ad interim restraint. It being considered that one or more of the questions presented, if the plaintiffs' contentions were sound, would make the provisions of the act of March 4, 1913, c. 160, 37 Stat. 1013 (Comp. St. 1913, § 1243), applicable, the application for the preliminary injunction, upon the return of the order to show cause, was heard by three judges, one of whom is a Circuit Judge.

The grounds upon which the plaintiffs claim that they are entitled to relief in this court are two: First. That certain ordinances of the city of Trenton and the acceptance thereof by some of the plaintiffs and their predecessors constituted contracts which could not be altered or changed by the city or the state of New Jersey, and which would be impaired, contrary to the provisions of section 10 of article 1 of the federal Constitution, by the enforcement of the ordinance of October, 1909, and the continuance of the order of August 17, 1915, or any order which the board might thereafter make which did not recognize their right to charge a straight five-cent fare. Second. That the order of the

board was made without notice to the plaintiffs, and without affording them an opportunity to be heard, and thus deprived them of property without due process of law, contrary to the fourteenth amendment.

[1] We have found it unnecessary to consider the interesting question presented by the first contention, as to whether contracts such as the plaintiffs claim do in fact exist. The second ground requires a determination as to whether the order complained of was in fact made without notice to the plaintiffs and without affording them an opportunity to be heard, and, if so, whether notice was necessary before the board could have legally made it. The board of public utility commissioners was created by an act of the New Jersey Legislature approved April 21, 1911 (P. L. 1911, p. 374), and was thereby vested with certain defined powers—among them to fix just and reasonable rates to be charged by various public utilities, included in which are street railway companies, whenever it should determine any existing rate to be unjust, unreasonable, or insufficient, and to hear and determine whether any increase, change, or alteration in rates, which might thereafter be made by any public utility, would be just and reasonable. The board was also vested with power, "pending such hearing and determination" of the latter question, to order, for a period not exceeding three months, the suspension of the increase, change, or alteration until it should have approved the same. It is by virtue of the last-mentioned power that the board presumed to act in making the order in question. After the lessee company sent the notification to the board of its intention to discontinue the sale of six tickets for 25 cents, the latter caused a copy of the same to be sent to the mayor of the city, with a letter advising him that if the city desired to submit anything to the board, or to make any motion in respect to the proposed action by the company, an opportunity would be afforded on August 17th. On the same day the board caused a letter to be sent to the lessee company acknowledging receipt of the notice, asking when it proposed to make the change, and inclosing a copy of the letter sent to the mayor. The company was not represented before the board at the hearing, and, as far as appears, was not notified whether the city proposed to take any action or make any motion before the board on the date specified, or otherwise. On that date, however, the city was represented, and on the motion of its solicitor the order in question was made. It thus appears that the only notice the plaintiffs had was that on a certain day the board would hear any motion that the city intended to make; but they were never notified that the city intended to make any motion whatsoever, or what it would be, and were afforded no opportunity to defend against the motion which was made and the order which the board entered.

Under these circumstances, if notice and hearing were necessary prerequisites, we think the plaintiffs were not given such notice or afforded such an opportunity to be heard in respect to the action which was taken as to satisfy the "due process of law" clause of the fourteenth amendment. But we think that the statute creating the board and defining its powers authorized an order of suspension to be made without notice or hearing. The powers of the board, so far as are necessary to be considered, are conferred by sections 16 and 17 of the act. Section 16 provides:

"The Board shall have power"—then follows, in 11 separate paragraphs, an enumeration of the powers. In some of these paragraphs the exercise of the power is expressly limited to "after hearing"; in others, to "after hearing upon notice."

Section 17 provides:

"The board shall have power, after hearing, upon notice, by order in writing, to require every public utility as herein defined"—then follows, in 8 separate paragraphs, an enumeration of powers.

It thus appears that the Legislature has carefully defined when a hearing and notice are necessary. The last of the paragraphs of section 17 confers two separate powers: One to hear and determine, either upon complaint or upon the board's own initiative, whether an increase, change, or alteration in any existing rate is just and reasonable; and the other to suspend, for a limited time, such increase, change, or alteration, "pending such hearing and determination." The latter power is expressly conferred in so many words, and by a separate sentence, in which there is no requirement that the order can be made only after hearing and notice. It is a separate power, deemed necessary by the Legislature, no doubt, to give more efficacy to the former. The reason for granting it, as well as the context, leads us to the conclusion that it is not limited or qualified by the opening paragraph of section 17, before quoted. That paragraph, we think, refers to the power to determine whether the proposed change would be just and reasonable.

It is difficult to understand why the Legislature should have required two hearings on the same question. If no other question were presented than that of reasonableness of the rate, as would most often be the case, the first hearing, to be of any effect whatever, must, of necessity, be practically the same as the second. On the other hand, it is reasonable to assume that the Legislature would wish to clothe the board, to which it had delegated the state's rate-making right, with power to preserve the status quo until there could be a hearing and determination upon the merits, without the delay incident to notice and hearing. This is the same power exercised by and conferred upon the Interstate Commerce Commission by the act of June 18, 1910 (36 Stat. 552, c. 309). Nor do we doubt the right of the Legislature to grant such a power, without violating the fourteenth amendment. Nothing more was done than to clothe a quasi judicial body with a power which has always been exercised by courts of competent jurisdiction.

[2] If the plaintiffs, in fact, have contracts which are beyond the power of either the municipality or the state to change or impair, the act of the board in temporarily depriving them of the benefit thereof did not infringe their constitutional rights to any greater extent than like rights are infringed, without violating constitutional provisions, when a court of competent jurisdiction, upon ex parte application, restrains the exercise of them pendente lite in order to preserve the status quo, pending a hearing and decision. The board did not attempt to determine whether any contract rights existed, or what they were, or whether they were beyond the right of the municipality or state to abrogate or change them. It merely held the whole matter in abey-

ance until there could be an investigation and a determination could be reached. The plaintiffs cannot assume that the board's decision will not recognize and give due effect to any contractual rights which they have. Under these circumstances it would, in our judgment, be improper for this court to attempt to adjudicate these questions, before the board which the Legislature of New Jersey has clothed with the legislative power over rates and whose jurisdiction has already been invoked, has done so, or had an opportunity to do so. In this respect this case cannot be distinguished from Prentis v. Atlantic Coast Line Co., 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150. It was urged there, as here, that the plaintiffs had contracts with the state, which could not be·changed except under certain conditions, which did not exist in that case. The court, after remarking that if the state had bound itself by contract not to cut down the rates as contemplated, there would seem to be no reason why the suit should not then be entertained in the federal court, said:

"But it would be premature and is unnecessary to decide whether the state has done so or not. No rate is irrevocably fixed by the state until the matter has been laid before the body having the last word. It may be that that body will adhere to the old rate or will establish one that will not be open to the charge of violating the contracts alleged. * * * On the question of contract, as on that of confiscation, it is reasonable and proper that the evidence should be laid, in the first instance, before the body having the last legislative word."

We feel that the doctrine thus announced is a wholesome one for our dual form of government, and that it should not be limited in its application by subtle distinctions or nice refinements. But the right of the plaintiffs to have this court pass upon the validity of the ordinance which is attacked cannot be denied on that ground, if the other essential prerequisites for the intervention of a court of equity are present. Although a decision that the ordinance is valid might involve a finding that the other ordinances, which the plaintiffs claim constitute contracts, were abrogated by it, and thus incidentally determine some of the questions before the state board, still the ordinance complained of was in itself a completed legislative act. The power and duty of a federal court, when applied to, to enjoin the execution of such acts, when they impair rights guaranteed by the federal Constitution, is unquestioned. Willcox v. Consolidated Gas Co., 212 U. S. 19, 29 Sup. Ct. 192, 53 L. Ed. 382, 48 L. R. A. (N. S.) 1134, 15 Ann. Cas. 1034.

There is, however, no sufficient proof to warrant the belief that the municipal authorities contemplate taking any action under that ordinance, except to assert it in support of their position before the board of public utility commissioners. The bill alleges, it is true, that the mayor has threatened to act under the ordinance and to revoke the licenses of the plaintiffs' cars; but the affidavit to support this allegation is purely upon information and belief. On the other hand, the action of the city counsel in appearing before the board and invoking its power indicates very clearly that there is no present intention on the part of the mayor or city authorities to take the drastic action alleged in the bill. It would therefore, under these circumstances, be improper to grant a preliminary injunction against the enforcement

of the penalties prescribed by the ordinance, even if it is invalid. Hence there is no necessity to consider whether it is valid or not.

The motion for the preliminary injunction will, accordingly, be denied, but without prejudice to a renewal of the same as respects the ordinance, if the city authorities attempt to enforce any of the penalties provided therein.